FEDERAL KEMPER LIFE ASSURANCE COMPANY, Plaintiff-Appellant,
v. OLD REPUBLIC SURETY COMPANY, Defendant-Appellee (Paul Eich-
wedel, Defendant).

First District (4th Division)   No. 1—89—2272

Opinion filed September 27, 1990.

Baker & McKenzie, of Chicago (Francis D. Morrissey, William Lynch Schaller, and L. Michael Tarpey, of counsel), for appellant.

Richard S. Wisner, Scott O. Reed, and Patrick G. Donnelly, all of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Federal Kemper Life Assurance Company (Kemper), appeals from an order of the circuit court dismissing its complaint against the defendant, Old Republic Surety Company (Surety), for failure to state a cause of action. Essentially, Kemper alleged that it was defrauded by defendant Paul Eichwedel while Eichwedel was acting in his capacity as administrator of the estate of David Schultz. Kemper sought to recover from Surety on Eichwedel's administrator's bond pursuant to section 12—15 of the Probate Code (Code), which provides that "[s]uit on a bond executed under this Act may be prosecuted *** for the use of any person who may have been injured by reason of the neglect or improper conduct of the principal on the bond." (Ill. Rev. Stat. 1989, ch. 110½, par. 12—15.) On appeal, Kemper contends that it is encompassed within the term "any person" and that its complaint should therefore not have been dismissed.

Count V of Kemper's amended complaint alleged that Kemper issued a $250,000 life insurance policy to Paul Eichwedel, insuring the life of Eichwedel's brother-in-law David Schultz. The application for the policy listed the beneficiary as Paul Eichwedel and stated the relationship to the proposed insured as that of "brother-in-law as executor." Schultz was subsequently murdered, and Eichwedel was appointed administrator of the estate. An investigation into the murder initially revealed that Eichwedel was not involved, and Kemper paid the insurance proceeds to Eichwedel in his capacity as administrator of Schultz's estate. As administrator, Eichwedel had posted a surety bond in the amount of $375,000, issued by the defendant Surety. Eichwedel endorsed the Kemper checks and deposited the proceeds. The record is unclear as to whether or not the proceeds were taken into the estate.

Further investigation into Schultz's murder led to Eichwedel's ar-

rest. Eichwedel eventually confessed to soliciting Schultz's murder. Kemper alleged on information and belief that Eichwedel converted to his own use all of the insurance proceeds he received as administrator of the estate of David Schultz. Kemper further alleged that the life insurance policy, having been procured by fraud, was null and void from its inception and that Kemper was entitled to restitution of the proceeds. Finally, Kemper alleged that Eichwedel's use of his office as administrator was central to the murder-for-insurance scheme and therefore implicated Surety's bond.

The trial court granted Surety's motion to dismiss count V of the amended complaint for failure to state a cause of action. Surety contended in its motion, and argues on appeal, that the administrator's bond affords protection only to the creditors, heirs, and legatees of the estate and covers only assets which properly belong to the estate. Kemper argues that it is encompassed within the term "any person" who may file suit on the bond and that the bond covers all assets received by the administrator under color of his office.

■ With respect to Kemper's first argument, the extent of a surety's liability on an administrator's bond in this State is controlled by statute. Section 12—15 of the Probate Code provides:

"Suit on a bond executed under this Act may be prosecuted against one or more of the obligors named in the bond in the name of the people of the State of Illinois for the use of *any person* who may have been injured by reason of the neglect or improper conduct of the principal on the bond." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110½, par. 12—15.)

Where the express language of a statute is clear and unambiguous, the terms are to be given their ordinary and popularly understood meaning. (*People v. Brown* (1982), 92 Ill. 2d 248, 256, 442 N.E.2d 136.) Courts will not read into a statute exceptions, limitations and conditions not stated therein. *People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014.

■ Kemper's complaint alleges that Eichwedel used his office as administrator of the estate of David Schultz to defraud Kemper of $250,000 in life insurance proceeds, which he then converted to his own use. Applying the clear and unambiguous language of section 12—15, we conclude that Kemper is encompassed within the term "any person" injured by reason of the improper conduct of the principal on the bond and may accordingly prosecute a suit on the bond.

Surety maintains, however, that four Illinois Appellate Court cases have determined that the bond of an administrator is given to protect only the creditors and beneficiaries of the estate and that recovery on the bond is not available to other parties injured by wrongful acts of the

administrator. (*People ex rel. First National Bank v. Illinois National Insurance Co.* (1976), 44 Ill. App. 3d 269, 358 N.E.2d 99; *American Insurance Group v. Waclawski* (1966), 66 Ill. App. 2d 397, 214 N.E.2d 535; *People ex rel. Dyer v. Sanculius* (1936), 284 Ill. App. 463, 2 N.E.2d 343; *Young v. People* (1890), 35 Ill. App. 363.) Surety relies primarily upon *Waclawski*, where the court determined that an insurer whose settlement payment was wrongfully withheld by an administrator had no standing to maintain an action against the administrator's surety. Although the pertinent wording of the statute in effect at that time allowing suits on an administrator's bond was identical to the language in section 12—15, *Waclawski* made no mention of the statute. (Ill. Rev. Stat. 1975, ch. 3, par. 162.) Instead, it cited *Sanculius* for the proposition that the bond of an administrator is "given to protect the creditors of the estate and the heirs of the decedent against loss and for no other purpose." (*Sanculius*, 284 Ill. App. at 472, 2 N.E.2d 347.) *Sanculius* states this proposition without any citation of authority whatsoever. The only case cited by Surety which refers to the statute providing for suit on an administrator's bond is the *Illinois National Insurance* case. The court in that case cited the statute then in effect which, like section 12—15, allowed recovery by any person injured by the improper conduct of the administrator (Ill. Rev. Stat. 1973, ch. 3, par. 162), then simply dismissed the statute without discussion and relied on *Waclawski* as controlling precedent. Given the lack of consideration of the controlling statutory language, we are not persuaded that these cases provide authority for limiting recovery on an administrator's bond to creditors and heirs of the estate. As stated earlier, where the language of a statute is clear and unambiguous, the court will not read into it exceptions, limitations and conditions that are not stated. (*People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014.) We do not consider it proper to read in an exception based on the case law cited by Surety.

The second argument advanced by Kemper is that the surety on an administrator's bond is liable for an administrator's wrongdoing with respect to all assets, whether or not they properly belong to the estate, which are received under color of his office. A review of case law from other jurisdictions reveals a split of authority on this question. Some courts take the position that the surety on an administrator's bond is obligated for the proper administrator of only such funds as constitute assets of the estate. (*Greenwich Savings Bank v. United States Fidelity & Guaranty Co.* (1976), 38 N.Y.2d 561, 345 N.E.2d 290, 381 N.Y.S.2d 820; *Greenwall v. Ligon* (Tex. Comm. App. 1929), 14 S.W.2d 829; *Stapley v. Stapley* (1926), 29 Ariz. 487, 242 P. 1005; *People ex rel. Brown v. Parker* (1913), 54 Colo. 604, 132 P. 56; Annot., 104 A.L.R. 180, 181

(1936).) Other courts, as argued by Kemper, have treated an administrator's bond as covering the proper administrator of all funds or property coming into the hands of the administrator under color of his office or authority. *Parker v. Potter* (1933), 204 N.C. 407, 168 S.E. 490; *Elizalde v. Murphy* (1909), 11 Cal. App. 32, 103 P. 904; *Hill v. Escort* (1905), 38 Tex. Civ. App. 487, 86 S.W. 367; *Clark v. Pence* (1903), 111 Tenn. 20, 76 S.W. 885; Annot., 82 A.L.R.3d 869 (1978); 31 Am. Jur. 2d *Executors and Administrators* §338, at 180-81 (1989).

Surety argues that, for policy reasons, it should be required to face liability for any and all fraudulent schemes of the administrator, no matter how extensive and regardless of whether such schemes are related to the assets of the estate. Although it cites no case law to support this argument, Surety maintains that section 12—5(a) of the Code (Ill. Rev. Stat. 1989, ch. 110½, par. 12—5(a)), which requires that a corporate surety provide a bond in the amount of 1½ times the value of the estate, establishes that the sole purpose of an administrator's bond is to protect the proper assets of the estate from dissipation by the administrator.

The answer to this argument is that the extent of liability faced by a surety on an administrator's bond is clearly set forth in section 12—15 of the Code, which permits suit on the bond by "any person" injured by the wrongful conduct of the administrator. There are no words in the statute which would lead a surety to believe that its liability on the bond extended only to protect the proper assets of the estate. Instead, statutory language would apprise the surety of the broad indemnification risk for "improper or wrongful conduct" of the administrator that it was undertaking. Where, as alleged here, the administrator uses the authority of his office, backed by the administrator's bond, to induce others to deal with him, we believe that public policy is served by allowing persons injured by his misconduct to rely upon the protection afforded by the bond.

For the foregoing reasons, we believe that the allegations set forth in count V of Kemper's complaint are sufficient to state a cause of action against Surety on the administrator's bond. Accordingly, the order of the trial court dismissing count V is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.