O. A. SKUTT, INC., Respondent, *v.* J. & H. GOODWIN, LTD., Appellant, Impleaded with THE BALLSTON REFRIGERATING STORAGE COMPANY, Defendant.

Fourth Department, May 5, 1937.

*Neil P. Cullom,* for the appellant.

*Charles P. Williams,* for the respondent.

EDGCOMB, J.   This action is brought by the plaintiff against J. & H. Goodwin, Ltd., a British corporation located at Manchester, England, and The Ballston Refrigerating Storage Company of Ballston Spa, N. Y., to recover for work, labor and services in soliciting consignments of 6,099 barrels of Ben Davis apples at the rate of twenty-five cents per barrel, in accordance with a contract alleged to have been made between the parties hereto.   Plaintiff has been allowed a recovery from defendant J. & H. Goodwin, Ltd., but not from The Ballston Refrigerating Storage Company. J. & H. Goodwin, Ltd., appeals.

The Burt Cold Storage Company is a corporation located at Burt, N. Y.   Its stock is owned equally by Charles A. Finley, its president, J. & H. Goodwin, Ltd., and The Ballston Refrigerating Storage Company.   The Burt Company is the agent and representative of Goodwin in western New York.   John A. Hyde was employed by the Burt Company to solicit consignments of fruit for Goodwin.   He had no authority to buy merchandise without first submitting the proposition to Mr. Finley, and getting his approval.

In the fall of 1932 the crop of Ben Davis apples in western New York was generally infected with apple maggot, and the growers had great difficulty in finding a market for the fruit.   The export trade could not be moved through the regular channels, because most of the European countries refused to admit a shipment of fruit which was not accompanied by a certificate of the United States Department of Agriculture, and the inspectors would not pass apples which were thus tainted.   About the only way this merchandise could be disposed of in quantities was to charter a ship, and send it to Holland, or some country where the restrictions were not so rigid.   This situation was discussed by Mr. Scutt, president of the plaintiff, and Mr. Hyde, in October of that year. There is a wide divergence in the testimony as to the details of the conversation, but concededly an arrangement was made whereby the plaintiff, between the twenty-fifth of October and the fourteenth of November, shipped 6,099 barrels of these diseased apples to The Ballston Refrigerating Storage Company at Baltimore, Md. It is conceded that plaintiff was to be paid an advance of seventy-five cents per barrel on the first shipload, and one dollar on the second, to take care of the cost of packing and barreling.   This amount was paid to the plaintiff by the Ballston Storage Company.

Respondent claims that it was to receive twenty-five cents a barrel as a service fee or commission for soliciting, purchasing and shipping the apples.   Hyde denies that any such agreement was made, but the referee has found to the contrary.   The referee

has also determined that Hyde was the agent of Goodwin in this transaction, and that his agreement bound his principal. The correctness of this holding is challenged on this appeal.

It is conceded that Hyde was never expressly authorized or hired by Goodwin to act for it in any capacity. He was not paid by Goodwin. He was the agent of the Burt Cold Storage Company, and was employed by that corporation to solicit consignments of fruit for Goodwin. The fact that the Burt Company was the representative of Goodwin in western New York did not make Hyde its agent.

Without specific authority from his principal an agent has no power to delegate his trust. The relation of principal and agent does not exist between the principal and a subagent. (Restatement of the Law of Agency, § 458; *Southack* v. *Ireland*, 109 App. Div. 45; *Rice* v. *Post*, 78 Hun, 547; *Dale* v. *Hepburn*, 11 Misc. 286; affd., 154 N. Y. 763; *Barber Agency Co.* v. *Co-operative Barrel Co.*, 133 Minn. 207; 158 N. W. 38; *Jenkins* v. *Funk*, 33 Fed. 915; *Cull* v. *Backhouse*, 6 Taunt. 148, note.)

The referee recognized this rule when he said in his opinion that " if plaintiff is to recover from defendant Goodwin Co., it must be upon the strength of the previous dealings with Mr. Hyde in its behalf."

While an agency may be inferred from prior habit or course of dealing of a similar nature between the parties (*Edwards* v. *Dooley*, 120 N. Y. 540, 551; *Beattie* v. *D., L. & W. R. R. Co.*, 90 id. 643), that rule cannot be invoked here.

Plaintiff never knew Hyde until the late summer or early fall of 1932. As a result of negotiations had between the two, plaintiff shipped Goodwin a quantity of pears and apples on different dates during September and October of that year. On the strength of this course of dealing, the referee has found that Goodwin held Hyde out to the plaintiff as its agent. This we think was error.

Acts and declarations of a person assuming to be the representative of another are not competent to prove the agency. A principal is responsible only for that appearance of authority which he himself has created, and not for that which is produced by the agent alone. (*Edwards* v. *Dooley*, 120 N. Y. 540, 551; *Churchill Grain & Seed Co., Inc.,* v. *Buchman*, 204 App. Div. 30, 33; *Bussing* v. *Lowell Film Productions, Inc.*, 233 id. 493, 495; affd., 259 N. Y. 593; *Fitzgerald* v. *Sherman*, 207 App. Div. 52; *Conant* v. *American Rubber Tire Co.*, 48 id. 327, 329.)

The rule is well settled that the extent of an implied authority is limited to acts of a like kind as those from which it is inferred, and that an implied power is never to be extended beyond the

obvious purpose for which it is granted. (Story on Agency [9th ed.], § 87; *Hazeltine* v. *Miller*, 44 Me. 177, 179; *Gregory* v. *Loose*, 19 Wash. 599, 603; 54 P. 33; *Graves* v. *Horton*, 38 Minn. 66; 35 N. W. 568; *Humphrey* v. *Havens*, 12 Minn. 298; *McAlpin* v. *Cassidy*, 17 Tex. 449, 463.)

It is also true that where an agency is sought to be established by a prior course of dealing, such conduct determines the extent of the agency as well as its existence.

Applying those principles to the facts in the case at bar, it is quite apparent that by its previous conduct and dealings the appellant never lulled the plaintiff into a belief that Hyde was its agent, clothed with authority to bind it by any such agreement as is relied upon here.

Even if, by any stretch of the imagination, it could be said that Hyde was the agent of Goodwin, he was only a special one, authorized simply to solicit consignments of fruit. He had no right to purchase merchandise without the consent of Finley, much less to make a contract to pay a third person for services. (*Fitzgerald* v. *Sherman*, 207 App. Div. 52, 54.)

A person employed by another for a particular purpose, and who is acting under limited and circumscribed powers, is a special agent. (*Jaques* v. *Todd*, 3 Wend. 83, 91; *Scott* v. *McGrath*, 7 Barb. 53, 55.)

The rule is well settled that a special agent cannot bind his principal in a matter beyond the authority conferred upon him. Plaintiff in dealing with Hyde was bound to know the extent of his legal power. (*Lockwood* v. *Embalmers Supply Co.*, 233 App. Div. 189, 193, and cases there cited.)

The task of proving that Goodwin ever authorized Hyde to make the contract sued upon rests upon the plaintiff. (*Churchill Grain & Seed Co., Inc.*, v. *Buchman*, 204 App. Div. 30, 33.) That burden has not been sustained.

The prior dealings between plaintiff and appellant, in which Hyde was involved, were far different from the present transaction. The former consignments of apples and pears were made direct to Goodwin; here they were made to the Ballston Company, which is in no way connected with Goodwin, except as both are stockholders in the Burt Cold Storage Company. The advances made on the first shipments were paid by checks of the Burt Storage Company, Goodwin's agent, while in the present instance they were paid by checks of the Ballston Company. Here no acknowledgment of the shipment was received from the appellant, while on the previous occasions receipts for all shipments were acknowledged by Goodwin, and sent to plaintiff. The prior

consignments were accompanied by certificates issued by the Department of Agriculture, permitting the merchandise to be admitted in Great Britain and most of the European countries where Goodwin was doing the bulk of its business; no such certificates accompanied the shipments of these maggot-infested apples. On all former transactions account sales were rendered by the Burt Storage Company, the agent of appellant, but here they were rendered by the Ballston Company. Previously, the advances made to plaintiff failed to specify their purpose; in the present transaction they were specifically made to cover packing, shipping, etc. In all previous transactions no promise was made by Hyde to pay plaintiff any commission or anything for services.

No general custom, such as is claimed to have been followed in regard to these Ben Davis shipments, was established by the prior course of dealing between the parties, and no agency can be inferred therefrom which would bind the appellant to pay the demands of the plaintiff.

Neither has Goodwin been shown to have ratified the acts of Hyde. So far as appears, Goodwin never profited by any of these transactions. Mr. MacDonald, the New York manager of the appellant, and who had supervision of all business moving through the New York office to foreign markets, testified that he never heard of the transaction relating to these maggot-infested apples until the commencement of this action. The referee, in his opinion, says that Goodwin, after the first shipments, advised the Burt Company that it would have nothing to do with the maggoty apples, and that Finley had been satisfied for some time before that Goodwin would repudiate the deal. Finley testified that when the purchase of this fruit was first suggested by Hyde, he was emphatic in the assertion that Goodwin would not be interested in the deal, but that the Ballston Storage Company would handle the apples. The matter was never taken up with MacDonald, or with Mr. Taylor, the resident director of Goodwin in this country.

Appellant, in our opinion, has not been sufficiently connected with this transaction, so as to make it responsible for Hyde's promise to pay a commission of twenty-five cents per barrel to the plaintiff, assuming that Hyde ever made any such agreement. That being so, the judgment appealed from should be reversed on the law and the facts, and the complaint dismissed. Certain findings of fact and conclusions of law should be disapproved and reversed, and new findings and conclusions made.

All concur; THOMPSON, J., having been present at the argument of said appeal, but having died on the 7th day of April, 1937, without having taken any part in the determination of this appeal. Present — SEARS, P. J., EDGCOMB, CROSBY and LEWIS, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.