American Insurance Group, a Corporation, Successor to American Associated Insurance Companies, Plaintiff-Appellant, v. Mary Patricia Waclawski, Administrator of the Estate of Zygmunt Waclawski, Deceased, and Hartford Accident and Indemnity Company, a Corporation, Defendants-Appellees.

**Gen. No. 50,463.**

First District, First Division.

January 7, 1966.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Herbert C. Loth, Jr., John W. Gilligan, and Kenneth A. Knutson, of counsel), for appellant.

Edward D. Lapperre, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff seeks to recover from the defendants, an administrator and her surety, $2,950 paid by plaintiff to the administrator in settlement of a wrongful death action. The administrator subsequently repudiated the settlement and did not return the money. The complaint consists of two counts, the first predicated on the misconduct of the administrator, and the second against her surety on her official administrator's bond. The trial court dismissed the complaint as to the surety. Plaintiff appeals on the theory that the complaint stated a cause of action against the defendant surety.

The complaint as amended shows that Mary Waclawski was appointed administrator of the estate of Zygmunt Waclawski, deceased, and filed in the Probate Court an administrator's bond with defendant Hartford Accident and Indemnity Company as surety, and that the provisions of the bond included the following:

> "The condition of this obligation is such that if the said Mary Patricia Waclawski, administratrix of the estate of Zygmunt Waclawski, deceased, faithfully discharges the duties of her office according to law and does all acts which may at any time be required of her by law or by a court, then this obligation is void; otherwise it remains in full force."

The only asset of the estate was a wrongful death action against Joseph Herrera, who was insured by plaintiff's predecessor corporation. On November 24, 1954, the Probate Court approved a settlement of the cause of action by the administrator for $2,950, and on that day, plaintiff delivered its draft in that amount to the administrator who endorsed and cashed it. Thereafter, on December 21, 1954, the administrator "appeared before the Probate Court of Cook County and repudiated the settlement set forth above and procured an order of the

Probate Court of Cook County setting aside the order of November 24, 1954 approving the settlement."

The complaint further states that on February 15, 1955, the administrator filed suit in the Superior Court of Cook County against Joseph Herrera, alleging as a cause of action the wrongful death of the decedent. On March 22, 1961, the administrator appeared before Judge Henry W. Dieringer, a Judge of the Superior Court, and procured an order which set aside the release of the cause of action against Joseph Herrera, and also ordered the administrator to repay the $2,950 within 60 days, which the administrator failed to do. This failure to pay is the basis of the present action. Count II charges that by virtue of the above described bond and the wrongful conduct of the administrator, defendant Hartford, as surety, is indebted to plaintiff in the sum of $2,950, together with interest.

The administrator answered both counts and admitted, in substance, all of the allegations of the complaint. For a further answer, the administrator states "that the deprivation of said sum on the part of the plaintiff is not due to any wrongdoing of this defendant, but was done in pursuance to her duties as Administrator."

Hartford moved to dismiss Count II, and its motion states that "plaintiff has failed to state a cause of action against this defendant, in that the acts and doings of the said Mary Patricia Waclawski, Administrator, . . . were in compliance with valid orders of the Probate Court of Cook County, Illinois."

A supplement to Hartford's motion to dismiss states that the Administrator's bond "is now void, for the reason that the administrator has performed all acts required of her by the court in which the bond was given, accepted and approved . . . ," and that "the Order approving settlement and authorizing distribution is not subject to collateral attack but can only be attacked in the Court that entered the Order. The present pro-

ceeding is a collateral attack upon a valid Order of the Probate Court of Cook County."

The trial court sustained the motion and supplemental motion of Hartford, struck and dismissed the complaint as to Hartford, and entered an order "that there is no just reason for delaying enforcement or appeal therefrom."

Plaintiff contends that Hartford's motion to dismiss admitted all of the allegations of fact contained in Count II (Villareal v. Trevino, 30 Ill App2d 77, 83, 173 NE2d 582 (1961)), and that the facts state a cause of action against Hartford, as surety on the administrator's bond.

Plaintiff argues that the "condition" specified in the bond, that "Mary Patricia Waclawski . . . does all acts which may at any time be required of her . . . by a court," has been violated, since she has not complied with the order of the Superior Court requiring repayment of the sum she received from plaintiff in settlement of the wrongful death action.

Plaintiff further asserts that its complaint is not a collateral attack on the Probate Court's order of approval of the settlement entered on November 24, 1954; that the order entered in the Superior Court on March 22, 1961, which set aside the release and ordered the repayment, was consistent with the order of the Probate Court entered on December 21, 1954, setting aside its settlement approval order of November 24, 1954, and that the administrator "herself elected not to retain the settlement proceeds but rather to litigate her claim. The Probate Court did not say she could keep the settlement proceeds, too, but said in effect only that she was not bound to retain them if she wanted to sue instead."

Defendant Hartford concedes that its motion to dismiss admits the release was set aside by the Superior Court trial judge, but Hartford does not admit the refusal to repay the funds previously distributed by the Probate

Court was wrongful. "Perhaps the trial judge erred in setting aside the release. Perhaps he should have let the release stand and that would have ended the matter. There is no reason to believe plaintiff would not have been satisfied with such a result at that stage of the proceedings, it having held the release and relied upon it nearly seven years after it had been first obtained."

■ We agree with Hartford that (1) the Probate Court proceedings, as related in the complaint, were according to statute and the rules of the Probate Court; (2) as all of the occurrences in question took place prior to the adoption of the new Judicial Article of the Illinois Constitution, the Probate Court had exclusive jurisdiction of the probate of the estate and the personal property of the decedent, and the Superior Court was "without jurisdiction to make any disposition of personal property belonging to the estate and in the control of the probate court" (Adams v. Holland, 348 Ill App 320, 322, 108 NE2d 815 (1952)); and (3) judgments and decrees of Probate Courts are not subject to review collaterally by Circuit Courts for error (Healea v. Verne, 343 Ill 325, 333, 175 NE 562 (1931)). "Objection to the validity of the proceedings in the county and probate courts, if any, must be raised in those courts." Jackson v. Pillsbury, 380 Ill 554, 44 NE2d 537 (1942).

■ ■ Hartford further asserts that the "dismissal order of Circuit Court, appealed from herein, was grounded on the fact that the order of repayment was entered by a court having no authority to enter such an order." We do not agree with this premise. The proceeds of a wrongful death action are within the jurisdiction of the Probate Court for the sole purpose of proper distribution, but jurisdiction of the wrongful death action is not. (Ill Rev Stats 1963, c 70, ¶ 2.) In the instant case, we believe it was within the jurisdiction of the Superior Court, in the wrongful death action, to enter

402

an order directing the administrator to repay the proceeds of the "repudiated" settlement.

However, the acceptance by this court of the foregoing pronouncements is not of much assistance in determining the issue here. The instant record does not contain the factual content of the Probate Court orders of November 24, 1954, and December 21, 1954, or of the Superior Court order of March 22, 1961. The record is barren as to whether the administrator made distribution of the settlement funds and what representations were made to the Probate Court on December 21, 1954, and of the terms of the order authorizing the repudiation of the accomplished settlement. Also, for reasons not disclosed by this record, plaintiff apparently never made any attempt in the Probate Court to recover these funds. In the absence of this factual information, we are required to make routine deductions from the record as we find it.

We think it is a fair inference that the order of November 24, 1954, authorized the administrator to accept $2,950 in settlement of the wrongful death action, to execute a proper release, and to distribute the money as directed. At that posture of the case, the heirs at law or persons entitled to participate in the agreed settlement were the ones for whose benefit the bond was given. If the money were then distributed to those entitled to receive it, the administrator would have faithfully discharged "the duties of her office."

 The official bond of an administrator is "given to protect the creditors of the estate and the heirs of the decedent against loss and for no other purpose." (People for Use of Dyer v. Sanculius, 284 Ill App 463, 472, 2 NE2d 343 (1936).) Ordinarily, there may be recovery on the bond only if someone for whose benefit it was given suffered damages. (34 CJS, Executors and Administrators, § 944; National Surety Co. v. Wages, 48

403

Ga App 720, 173 SE 451 (1934).) In our opinion, plaintiff has not alleged any facts to show that the liability on the administrator's bond here should be expanded to secure other than creditors, legatees and next of kin from loss through the default or fraud of the administrator. Plaintiff does not occupy the status of an heir at law, legatee or a creditor, in their accepted sense and therefore is not one for whose benefit the bond was given. Any damages suffered by it as a result of its dealing with the administrator are not recoverable from the surety. In People v. Huffman, 182 Ill 390, 55 NE 981 (1899), the court stated (p 401):

> "The contract of a surety is to be construed strictly, both in law and equity, and his liability is not to be extended, by implication, beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation is he bound, and no further."

██ The administrator here may have received money for which she has no authority to retain and for which she may be liable individually, but it is not a charge upon the estate of the decedent for which her surety can be held liable. Young v. People, 35 Ill App 363 (1890).

We conclude plaintiff's action against the administrator does not come within the generally accepted area of liability or purpose of an administrator's bond, and defendant Hartford, as surety, should not be held liable for an alleged wrongful act beyond the scope of its undertaking.

For the reasons given, the order appealed from is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.